UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDON L BALDWIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:17-cv-00823-JMS-DML ) |
| MICHAEL WITTLE, *et al.* | ) ) ) |
| Defendants. | ) |

## **ORDER**

Pending before the Court are two Motions to Dismiss addressing an indemnification issue that is collateral to Plaintiff Brandon Baldwin's claims. Mr. Baldwin's claims arise from an incident at a Menards store where Defendant Benjamin Polley, a private security officer working for Defendant Blue Line LP Inc. ("Blue Line"), allegedly attempted to stop Mr. Baldwin for stealing.

As relevant to the pending Motions, Mr. Baldwin alleges that two employees working for Defendant Menard, Inc. ("Menards") defamed Mr. Baldwin. Mr. Baldwin alleges that, on the day of the incident, a Menards employee falsely told Mr. Polley that Mr. Baldwin had stolen from Menards. Mr. Baldwin also alleges that, on the day after the incident, a Menards employee told an acquaintance of Mr. Baldwin that Mr. Baldwin had stolen from Menards. Menards, in turn, alleges that Mr. Polley observed Mr. Baldwin in the Menards over security cameras and set the whole incident in motion by telling Menards employees that Mr. Baldwin had stolen from Menards and demanding that Mr. Baldwin stop as he was trying to leave the parking lot. Menards filed a

Crossclaim Complaint against Blue Line, [Filing No. 15 at 9-10], and a Third-Party Complaint against Scottsdale Insurance Company ("Scottsdale"), [Filing No. 15 at 11-12], seeking a declaration that Blue Line and Scottsdale must defend and indemnify Menards for Mr. Baldwin's defamation claims.

Blue Line and Scottsdale (collectively, "Defendants") now move to dismiss Menards' claims, arguing that Menards' Crossclaim and Third-Party Complaints fail to state a claim. [Filing No. 24 (Blue Line Motion to Dismiss); Filing No. 41 (Scottsdale Motion to Dismiss).] Scottsdale additionally argues that it is entitled to arbitrate Menards' claims. For the following reasons, the Court **DENIES** Defendants' Motions.

## I.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility

determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following facts are drawn from Mr. Baldwin's Complaint and Menards' Crossclaim and Third-Party Complaints.[1] They are accepted as true for the purposes of deciding Defendants' Motions to Dismiss.

### A. Menards Incident

Underlying Menards' indemnification claims are the claims brought by Mr. Baldwin, the Plaintiff in this matter, stemming from a March 2015 incident with Menards management; Mr. Polley, a security officer for Blue Line; and Defendant Michael Wittle ("Officer Wittle"), a police officer who responded to the scene. [Filing No. 1.] On March 17, 2015, Mr. Polley observed Mr. Baldwin shopping at a Menards store over closed circuit television and believed that Mr. Baldwin was attempting to steal from the store. [Filing No. 1 at 1-3.] In fact, Mr. Baldwin had paid for his merchandise and had a receipt to show for it. [Filing No. 1 at 8.]

While in the parking lot outside of the store, Mr. Polley asked Mr. Baldwin to stop and attempted to detain him. [Filing No. 1 at 7-8.] A Menards manager likewise came outside, spoke to Mr. Baldwin, and accused Mr. Baldwin of theft. [Filing No. 1 at 8.] Mr. Baldwin protested his innocence and continued to walk to his car. [Filing No. 1 at 8.]

---

[1] Menards has attached certain affidavits to its responses to Defendants' Motions to Dismiss. [Filing No. 27-2; Filing No. 44-1; Filing No. 44-3.] Blue Line briefly challenges the Court's consideration of any documents aside from the relevant contracts and allegations in the pleadings. [Filing No. 29 at 5.] Blue Line's concerns are misplaced. "When offered by a party opposing a Rule 12(b)(6) motion, . . . such documents may be used to illustrate facts the party would be prepared to prove at the appropriate stage of the proceedings." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015). The Court notes, however, that it was able to resolve Defendants' Motions without reference to these additional materials.

3

Mr. Polley contacted the police. [Filing No. 1 at 8.] Officer Wittle arrived and matters quickly escalated. [Filing No. 1 at 8-10.] The encounter ended with Officer Wittle twice tasing Mr. Baldwin and cuffing Mr. Baldwin without locking the handcuffs to stop them from tightening. [Filing No. 1 at 10-11.]

On March 18, the day following the incident, a Menards employee told an acquaintance of Mr. Baldwin that Mr. Baldwin had been caught stealing from the store. [Filing No. 1 at 11.]

**B. Relevant Legal Relationships**

During the Menards incident, Mr. Polley was employed by Blue Line, a security services provider, and was placed at Menards to provide security pursuant to a Contract for Security Services ("Security Contract") between Menards and Blue Line.[2] [Filing No. 15-1.] Specifically, the Security Contract imposes upon Blue Line the "duty to prevent the loss of merchandise, property and shoplifter apprehension." [Filing No. 15-1 at 1.] The Security Contract contains an indemnification clause, which provides as follows:

> INDEMNIFICATION. Security [Blue Line] shall defend, indemnify and hold harmless Menards, its agents and its employees from any liability, damages, expenses, claims, demands, actions or causes of action, including attorney fees, arising out of performance of the work hereunder, whether such liability, damages, expenses, claims, demands, actions or causes of action are caused by Security [Blue Line], its subcontractors, or their agents or employees, or any persons acting on their behalf, regardless of whether such liability, damages, expenses, claims, demands, actions or causes of actions are caused in part by a party [Menards] indemnified hereunder.

---

[2] The Security Contract is attached to Menards' Crossclaim Complaint and is considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). It is therefore properly considered by the Court on a motion to dismiss under Rule 12(b)(6). *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[Filing No. 15-1 at 3.] The Security Contract further provided that Blue Line "shall also purchase and maintain insurance, which will protect it and Menards from claims arising out of [Blue Line]'s, its agents or employees, [sic] performance of this Agreement." [Filing No. 5-1 at 2.]

Blue Line, in turn, contracted with Scottsdale to add Menards as an additional insured to its general liability insurance policy (the "Insurance Policy").[3] [Filing No. 43-2 at 25-26.] In part, the Insurance Policy insured Menards "with respect to liability for . . . 'personal and advertising injury' caused, in whole or in part, by: 1. Your [Blue Line's] acts or omissions." [Filing No. 43-2 at 25.] The Insurance Policy further provided that, "[i]f coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured." [Filing No. 43-2 at 25.]

### C. Menards' Claims Against Blue Line & Scottsdale

Based upon the provisions of the Security Contract and the Insurance Policy, Menards brought claims against Blue Line and Scottsdale, seeking a declaration that both Defendants must defend and indemnify Menards for Mr. Baldwin's defamation claims against Menards. [Filing No. 15 at 9-12.] Menards alleges that Mr. Baldwin's defamation claims arise out of Mr. Polley's duties under the Security Contract and are therefore covered by the indemnification clause. [Filing No. 15 at 9-12.] Essentially, Menards alleges that any liability that it may have from the Menards incident resulted from Mr. Polley's conduct and statements. [Filing No. 15 at 9-12.] Menards additionally seeks a declaration that Blue Line was responsible for providing liability insurance for Mr. Baldwin's claims as specified in the Security Contract. [Filing No. 15 at 10.] In lieu of

---

[3] The Insurance Policy, attached to Scottsdale's Motion to Dismiss, is referenced in Menards' Third Party Complaint and is central to Menards' claims. It is therefore also properly considered by the Court. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

5

answers, Defendants filed Motions to Dismiss Menards' claims against them pursuant to Rule 12(b)(6). [Filing No. 24; Filing No. 41.]

## III.
### DISCUSSION

Defendants make several arguments as to why Menards' claims should not proceed. First, Scottsdale argues that it is entitled to privately arbitrate Menards' claims. Second, Defendants argue that the Security Contract does not require indemnification for Mr. Baldwin's defamation claims. Finally, Blue Line argues that Menards' claim for a declaration as to Blue Line's duty to provide liability insurance either fails as a matter of law or is not yet ripe for determination. The Court will address each argument in turn. However, before doing so, the Court must first determine what law applies to Menards' claims.

### A. Applicable Law

Mr. Baldwin's Complaint invokes the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, alleging constitutional claims against Officer Wittle under 42 U.S.C. § 1983. [Filing No. 1 at 2.] Menards' Crossclaim and Third-Party Complaints neither set forth a basis for diversity jurisdiction nor involve a federal question. Menards' claims therefore fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367 as claims that are "part of the same case or controversy" as the § 1983 claims brought by Mr. Baldwin. As such, the Court applies state law to the dispute between Menards and Defendants. But a critical question remains: which state's law applies to interpreting the relevant contracts?

Though no party pointed it out, the Security Contract in two places provides that Wisconsin law applies. [Filing No. 15-1 at 2 ("The terms of this contract shall be construed and interpreted under the laws of the State of Wisconsin."); Filing No. 15-1 at 3 ("This Agreement . . . shall be construed in accordance with the laws of the State of Wisconsin.").] The question of applicable

6

law should have easily been resolved because federal courts apply the choice of law rules of the forum state and, as a general matter, "Indiana enforces choice-of-law clauses." *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996); *see, e.g.*, *Biomet 3i, LLC v. Land*, 2017 WL 1483461, at *7 (N.D. Ind. 2017) (collecting cases).

This, however, is where the rubber meets the road. As mentioned above, no party invokes the Security Contract's choice of law clause. Moreover, the parties rely almost wholly upon Indiana caselaw and cite to authority from other jurisdictions merely as persuasive authority. It thus appears that the parties all agree that Indiana law applies. As the Seventh Circuit has explained:

> Ours is an adversary system, and the circumstances in which a federal or any other court will [raise an uncontseted issue] are therefore exceptional. . . . Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).

*Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991).

As the parties agree on which state's law applies, the Court will follow the Seventh Circuit's sound advice and will apply Indiana law in resolving Defendants' Motions. With this important preliminary issue resolved, the Court now turns to the Defendants' arguments.

**B. Arbitration Clause**

Scottsdale argues that Menards must arbitrate its claims against Scottsdale pursuant to the mandatory arbitration clause in the Security Contract.[4] [Filing No. 42 at 11.] In support,

---

[4] Scottsdale asserts that it is entitled to dismissal if Menards is required to arbitrate, but the proper procedure where a court issues an order compelling arbitration is to stay the case until arbitration is complete. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). This portion of Scottsdale's Motion to Dismiss is therefore properly treated as a motion to stay and to compel arbitration.

7

Scottsdale argues that the Security Contract provides that Menards' claim against Scottsdale is a "direct or indirect claim relating to" the Security Contract and therefore falls within the scope of the mandatory arbitration clause. [Filing No. 42 at 11.]

In response, Menards argues that Scottsdale does not have the right to enforce the mandatory arbitration clause because Scottsdale is not a party to the Security Contract between Menards and Blue Line.[5] [Filing No. 44 at 7.] Menards argues that nonparties may enforce an arbitration clause only when they are in privity with a party who has a right to enforce the contract. [Filing No. 44 at 7.] Menards further argues that the Insurance Policy, by providing that Scottsdale's coverage "will not be broader" than required by the Security Contract, also does not permit Scottsdale to enforce the mandatory arbitration clause. [Filing No. 44 at 8.]

In reply, Scottsdale first argues that it is in privity with Blue Line. [Filing No. 45 at 13.] Second, Scottsdale argues that the Insurance Policy fully incorporates the Security Contract and restates its argument that the Security Contract itself permits Scottsdale to enforce the mandatory arbitration clause. [Filing No. 45 at 13-14.] Finally, Scottsdale argues Menards may not rely upon its rights under the Security Contract while denying Scottsdale the right to pursue arbitration as provided in the contract. [Filing No. 45 at 14-15.]

Before a court addresses the scope of the agreement, which is governed by the Federal Arbitration Act, 9 U.S.C. § 2, the court must first resolve the issue of whether an arbitration agreement exists. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "Whether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

---

[5] The Court notes that no party contends that Blue Line has demanded arbitration of Menards crossclaim.

Under Indiana law, Scottsdale, as the party seeking to compel arbitration, bears the burden of proof of demonstrating the "existence of an enforceable agreement to arbitrate the dispute" and that the "disputed matter is the type of claim that the parties agreed to arbitrate." *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 284 (Ind. Ct. App. 2004). As a general matter, "only those who are parties to a contract or those in privity with a party have the right to enforce the contract." *Id.* at 285 (citing *Mislenkov v. Accurate Metal Detinnning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)). This is the case even where an arbitration clause is written broadly for the simple reason that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

First, Scottsdale must demonstrate that there is an enforceable arbitration agreement between Scottsdale and Menards. Scottsdale, without meaningful analysis, suggests that it may enforce the Security Contract's arbitration clause because it is in privity with Blue Line. [Filing No. 45 at 13.] Privity requires "mutual or successive relationships to the same right of property or an identification of interest of one person with another as to represent the same legal right." *Daimler Chrysler*, 814 N.E.2d at 285. Scottsdale's argument focuses on the identity of interest requirement.

Per Menards' allegations and the contracts submitted by the parties, Scottsdale's and Blue Line's respective responsibilities to Menards arise out of two distinct contractual relationships. Scottsdale has undertaken a duty to Menards under the Insurance Policy. Blue Line has undertaken contractual responsibilities to Menards under the Security Contract. But Scottsdale makes no effort to explain how Scottsdale and Blue Line could share an identity of interest so as to represent

9

the same legal right when their respective responsibilities to Menards arise out of separate contracts. In fact, Scottsdale has no rights or duties under the Security Contract; the duties in the Security Contract are limitations on Scottsdale's responsibilities and are merely incorporated by reference in the wholly separate Insurance Policy. [*See* [Filing No. 43-2 at 25](#) (providing that Insurance Policy is amended to include Menards as "additional insured" but limiting coverage to "that which [Blue Line is] required by [the Security Contract] to provide for such additional insured").] Scottsdale cites no authority to support its argument that the inclusion by reference in one contract of duties from another contract can establish privity among parties owing obligations arising out of separate contracts.

As Scottsdale has not established that it is in privity with a party to the Security Contract, Scottsdale is a "stranger to the contract" and must rely upon other contract or equity doctrines to establish its right to invoke the mandatory arbitration clause. *[Daimler Chrysler](#)*, 814 N.E.2d at 285. Scottsdale's argument that Menards is attempting to reap the benefits of the Security Contract without complying with its obligations under the contract could be read to invoke the doctrine of equitable estoppel. This doctrine, as applied to the arbitration context, first surfaced in Indiana law in the Seventh Circuit's decision in *[Hughes Masonry Co., Inc. v. Greater Clark County School Building Corp.](#)*, 659 F.2d 836 (7th Cir. 1981), though a subsequent Seventh Circuit opinion has questioned whether *Hughes Masonry* was properly rooted in state law instead of federal law, *[Scheurer v. Fromm Family Foods LLC](#)*, 863 F.3d 748, 754 (7th Cir. 2017). *Hughes Masonry* explained that a party to a contract seeking to hold a nonparty liable for failure to perform duties under the same contract must comply with the mandatory arbitration clause if the nonparty so demands. [653 F.3d at 838-39](#). In *German American Financial Advisors & Trust Co. v. Reed*, the Indiana Court of Appeals adopted the *Hughes Masonry* formulation of equitable estoppel. 969

10

N.E.2d 621 (Ind. Ct. App. 2012). *German American* is the lone Indiana state court opinion to adopt the *Hughes Masonry* doctrine, and no Indiana state court has cited to *German American* since its issuance.

While summarizing facts that could fall within the scope of the *German American* formulation of the equitable estoppel doctrine, Scottsdale fails to develop any legal argument to demonstrate that the doctrine applies. The Court may not develop arguments for litigants, and undeveloped arguments are waived. *See, e.g.*, *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

Even had Scottsdale properly developed a legal argument for why equitable estoppel might apply to this case, the Court is not persuaded that the Indiana Supreme Court would adopt the *German American* majority's position. While intermediate court opinions generally warrant "great weight" when federal courts apply state law, they may properly be disregarded where there are "persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). There are several such "persuasive indications" with regard to *German American*.

The dissent in *German American* made two points, both of which the Court finds persuasive. First, the dissent noted that Indiana has a statute on the matter, providing that "[i]f the parties to [an arbitration] agreement stipulate in writing, the agreement may be enforced by designated third parties." 969 N.E.2d at 629 (Barnes, J., dissenting in part) (quoting Ind. Code § 34-57-2-1(a)). Thus, the dissent argued, the majority's formulation allows third parties to enforce arbitration agreements without a signed stipulation, in noncompliance with the requirements of section 34-57-2-1(a).

Second, the dissent noted that the majority was adopting an "equitable estoppel" theory to arbitration agreements without analyzing the elements of equitable estoppel under Indiana law. As the dissent further noted,

> the standard Indiana definition of 'equitable estoppel' . . . requires a party to show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.

*Id.* at 629. The broad formulation adopted by the majority reads the "reliance" component of equitable estoppel right out of the doctrine. Several neighboring states with similar equitable estoppel doctrines have declined to adopt the *Hughes Masonry*/*German American* formulation as inconsistent with the doctrine's reliance requirement. *See, e.g.*, *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017) (applying Wisconsin law and collecting cases); *Ervin v. Nokia, Inc.*, 812 N.E.2d 508, 541-42 (Ill. Ct. App. 2004) (refusing to expand equitable estoppel doctrine as inconsistent with "basic principle of arbitration" that party cannot be required to arbitrate a particular dispute without agreeing to do so). The Court finds this argument particularly persuasive and concludes that the Indiana Supreme Court would reject the *German American* majority's approach as inconsistent with the reliance requirement of Indiana's equitable estoppel doctrine. Thus, even had Scottsdale developed an argument as to why equitable estoppel would apply, it could not have taken advantage of the test laid out in *German American*.

Scottsdale bears the burden of demonstrating that it has an enforceable right to arbitrate its dispute with Menards. Scottsdale is not a party to the Security Contract, and Scottsdale has not demonstrated that the "interrelatedness" of the Insurance Policy and the Security Contract is sufficient to establish privity with Blue Lune so as to give Scottsdale the right to enforce the Security Contract's arbitration clause. Nor has Scottsdale established an equitable or other basis

for enforcing the Security Contract's arbitration clause. Accordingly, the Court **DENIES** Scottsdale's Motion to Dismiss to the extent it seeks to compel Menards to arbitrate.

### C. Indemnification for Mr. Baldwin's Defamation Claims

Defendants jointly argue that they need not indemnify Menards for Mr. Baldwin's defamation claims under the terms of the relevant contracts and Indiana law.[6] Defendants' arguments boil down to one theme: the relevant contracts do not contemplate indemnification for Menards' own intentional torts. Relatedly, Defendants also argue that the relevant contracts should be interpreted in terms of legal causation, and Blue Line could not have caused Menards to act with malice as required for the tort of defamation. Blue Line bases its arguments on the Security Contract. Scottsdale bases its arguments on both the Security Contract and the language used in the Insurance Policy.

In response to each Defendant's Motion, Menards argues that, as a factual matter, Mr. Baldwin's claims arise at least in part from Mr. Polley's actions. [Filing No. 27; Filing No. 44.] Menards argues that the contractual language encompasses indemnification for these claims.[7]

Indiana law applies the general rules of contract interpretation to indemnification agreements. *State v. Daily Express, Inc.*, 465 N.E.2d 764, 767 (Ind. Ct. App. 1984). "A contract

---

[6] Scottsdale incorporates Blue Line's arguments by reference, arguing that if Mr. Baldwin's claims fall outside the Security Contract's indemnification clause then Scottsdale is necessarily not liable because the Security Contract limits the scope of Scottsdale's liability to Menards. [Filing No. 45 at 13.]

[7] Menards filed a Motion for Leave to File Surreply to Blue Line's Motion to Dismiss, arguing that Blue Line raised an argument regarding indemnification for intentional torts for the first time in its reply brief. [Filing No. 32.] However, because Blue Line first raised this argument in its initial brief, [*see* Filing No. 25 at 6-7], the Court **DENIES** Menards' Motion for Leave, [Filing No. 32]. Rather than respond to Menards' Motion for Leave, Blue Line filed a Motion to Strike Menards' Surreply. [Filing No. 33.] But Menards never filed a surreply—it only filed a motion for leave to do so. Accordingly, the Court **DENIES AS MOOT** Blue Line's Motion to Strike. [Filing No. 33.]

of indemnity should be construed to cover all losses and damages to which it reasonably appears that the parties intended it to apply." *Zebrowski & Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983). Though indemnification clauses are "strictly construed," *Indianapolis City Mkt. Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1024 (Ind. Ct. App. 2009), "Indiana law is clear that 'use of words such as 'growing out of the performance of this order' or 'resulting from or arising in connection with' in indemnification agreements is evidence that the parties intended the agreement to provide broad protection,'" *Acuity Mut. Ins. Co. v. T & R Pavement Markings, Inc.*, 2011 WL 2472246, at *5 (S.D. Ind. 2011) (quoting *Allied-Signal Inc. v. Acme Serv. Corp.*, 1992 WL 165816, at *7 (N.D. Ind. 1992) (citing both *Fort Wayne Cablevision v. Ind. & Mich. Elec. Co.*, 443 N.E.2d 863, 866 (N.D. Ind. 1992), and *Indem. Ins. Co. v. Koontz Wagner Elec. Co.*, 233 F.2d 380, 382-83 (7th Cir. 1956))).

As set forth above, the Security Contract provides:

Security [Blue Line] shall defend, indemnify and hold harmless Menards, its agents and its employees from any liability, damages, expenses, claims, demands, actions or causes of action, including attorney fees, arising out of performance of the work hereunder, whether such liability, damages, expenses, claims, demands, actions or causes of action are caused by Security [Blue Line], its subcontractors, or their agents or employees, or any persons acting on their behalf, regardless of whether such liability, damages, expenses, claims, demands, actions or causes of actions are caused in part by a party [Menards] indemnified hereunder.

[Filing No. 15-1 at 3.]

The Court concludes that, at this early stage in the litigation, Menards has plausibly pleaded that Mr. Baldwin's claims fall within the scope of the Security Contract's indemnification clause. First, as the parties recognize, Indiana has not adopted a categorical restriction on contracting for liability for intentional torts. *Cf. State Group Indus. (USA) Ltd. v. Murphy & Assocs. Indus. Servs. Inc.*, 878 N.E.2d 475, 479 (Ind. Ct. App. 2007) ("[W]e have found no Indiana decision indicating that a party may not contract against liability for intentional tortuous acts . . . ."). Moreover,

14

although Blue Line cites to *State Group* as an indication that Indiana public policy might not tolerate an exculpatory clause for intentional torts, *State Group* makes no mention of indemnification agreements which are designed to shift liability rather than exculpate. Particularly in this case, where Menards has alleged that it is entitled to indemnification due at least in part to Blue Line's actions, it is not as obvious as Blue Line suggests that enforcing an indemnification agreement in this case would run afoul of the concerns raised in *State Group*.

Second, Indiana law accords sophisticated parties great freedom in defining the breadth of an indemnification agreement, as illustrated by the court's analysis in *Allied-Signal*. 1992 WL 165816. The *Allied-Signal* court was tasked with interpreting the following indemnification agreement:

> Seller will indemnify and save harmless Buyer, its employees, agents and invitees from and against all liability, demands, claims, loss, cost, damage and expense by reason or on account of property damage, death and personal injury of whatsoever nature or kind arising out of, as a result of, or in connection with the performance of this order which is occasioned by the actions or omissions of seller or its suppliers.

*Id.* at *1. While the plaintiff in *Allied-Signal* sought indemnification for allegations of negligence, the court's plain-meaning analysis is relevant to this case. The indemnitor argued that it could not be required to indemnify the plaintiff because its actions were not the "proximate cause" of the plaintiff's loss or damage. *Id.* at *6. The court rejected the indemnitor's argument:

> Neither the indemnity clause nor Indiana law support Acme's attempt to limit the scope of the indemnification agreement by invoking tort law principles of proximate cause and foreseeability. Nowhere do the terms "proximate cause", "reasonably foreseeable", or "negligence" appear in the clause. Had the parties intended to limit Acme's indemnity liability to only those acts that would give rise to Acme's liability in tort, they could have done so by drafting the clause to provide for indemnity only for loss caused by Acme's negligence, or for only those losses proximately caused by Acme.

*Id.* at *7.

Defendants here are attempting to add unwritten limitations to the Security Contract. The Security Contract is phrased broadly, using the "arising out of" language the Indiana courts have treated as providing broad protection. At this stage, the Court finds it plausible that "arising out of" may mean that Defendants must indemnify Menards not only for liability for which Blue Line is a legal cause, but for "any liability, damages, expenses, claims, demands, actions or causes of actions" for which Blue Line's performance under the contract is a factual cause, such as Mr. Baldwin's defamation claims against Menards. Adopting the cramped definition Defendants suggest would render several of the terms superfluous. True, the indemnification clause contains legal terms of art such as "liability" and "causes of action," but it also covers "expenses," "claims," and "demands" which may arise from Blue Line's conduct. Defendants do not explain how one would define the legal cause of a demand, for example. Thus, if the "expenses," "claims," and "demands" arising from the Menards incident can factually be traced to Mr. Polley's negligent conduct as a Blue Line employee, Defendants may be responsible for indemnifying Menards. Menards has plausibly alleged that, factually, Mr. Polley was responsible (at least in part) for the Menards incident by falsely and negligently telling Menards employees that Mr. Baldwin had stolen from the Menards store. Accordingly, Menards claims against Blue Line must survive Blue Line's Motion to Dismiss.

Finally, the Court is not pursuaded that the use of the word "caused" in the Insurance Policy is sufficient to let Scottsdale off the hook on a motion to dismiss. The Insurance Policy provides insurance for liability for "'personal and advertising injury' caused, in whole or in part, by: 1. Your [Blue Line's] acts or omissions." [Filing No. 43-2 at 25.] As Scottsdale recognizes, interpretation of this additional insured provision in this context presents an issue of first impression under Indiana law. Again, Menards plausibly alleges that Mr. Polley's actions caused the Menards

incident and subsequent injuries to Mr. Baldwin for which Mr. Baldwin is now suing Menards. Thus, Menards' claims also survive Scottsdale's Motion to Dismiss.

Blue Line's and Scottsdale's preferred interpretations may well prevail on summary judgment, when the Court may again take up these issues on a fully developed record and with more targeted analyses. It is enough to observe at this stage that Menards has plausibly alleged that Mr. Baldwin's claims, injuries, or demands arose from and were caused by Mr. Polley's performance of work under the contract. The Court therefore **DENIES** Defendants' Motions to the extent they seek to dismiss Menards' Crossclaim and Third-Party Complaints for failure to state a claim.

### D. Menards' Claim Against Blue Line for Insurance

Finally, Blue Line generally contends that Menards' claim that Blue Line is required to provide insurance under the Security Contract must be dismissed. [Filing No. 25 at 8.]

In response, Menards argues that Blue Line is required to purchase insurance for Menards under the Security Contract. [Filing No. 27 at 10-11.] Menards argues that "[i]f the Court determines there is coverage, Scottsdale must defend and indemnfiy Menard. If the Court determines there is no coverage for Menard that logically raises the issue whether Blue Line breached its contractual duty to provide insurance coverage for Menard." [Filing No. 27 at 11.]

In reply, Blue Line argues that either Menards' claim is not ripe or Menards has failed to state a claim by also pleading that Blue Line added Menards as an additional insured to its poicy with Scottsdale. [Filing No. 29 at 7-8.]

Blue Line's arguments were raised for the first time in its reply brief, and arguments raised for the first time in reply are usually waived. However, ripeness has a jurisdictional component, as "federal courts may only adjudicate 'cases or controversies' and may not render advisory

opinions." *Hinrichs v. Whitman*, 975 F.2d 1329, 1333 (7th Cir. 1992). In the duty-to-defend context, for example, a claim by an insured that an insurer has a duty to defend in an ongoing action presents a ripe controversy. *See Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir. 1970).

At this time, Menards has alleged that the Security Contract required Blue Line to provide insurance for Menards against Mr. Baldwin's claims. Menards has also alleged that it has made a demand on Scottsdale to defend and indemnify it against Mr. Baldwin's claims and that Scottsdale has denied Menards' tender. As far as Menards is concerned, as of this moment Menards has no insurance against Mr. Baldwin's claims. An eventual determination that Scottsdale is required to defend and indemnify Menards would moot this particular claim, as would a determination that the claim falls outside of the scope of the Security Contract's indemnification clause. But for now, an actual controversy exists between Menards and Blue Line as to whether it has satisfied its obligation of maintaining insurance for Menards.

Finally, Menards has not pleaded itself out of court by alleging both that Blue Line has failed to provide insurance and that Blue Line has added Menards as an additional insured to its Scottsdale policy. Those are not mutually exclusive allegations if the Insurance Policy turns out to be narrower than required under the Security Contract. Thus, Menards' allegation that Blue Line has breached the Security Contract is ripe and states a claim for relief. The Court therefore **DENIES** Blue Line's Motion to Dismiss Menards' claim that Blue Line failed to provide insurance as required by the Security Contract.

## IV.
### CONCLUSION

On a motion to dismiss, the Court's sole task is to determine whether a plaintiff's claims have legal viability. At this juncture, the Court finds that Menards has plausibly pleaded that it is

entitled to defense and indemnification from Blue Line and Scottsdale. Whether Menards will ultimately be entitled to defense and indemnification under the relevant contracts must be determined at another time. Therefore, the Court **DENIES** Blue Line's Motion to Dismiss, [Filing No. 24]; Menards' Motion for Leave to File Surreply, [Filing No. 32]; Blue Line's Motion to Strike Menards' Surreply, [Filing No. 33]; and Scottsdale's Motion to Dismiss, [Filing No. 41].

Date: 9/6/2017

*Signature*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**